No. 23-5111

---

**In The United States Court of Appeals
for the District of Columbia Circuit**

---

David Alan Carmichael; Lawrence Donald Lewis,

      Plaintiffs-Appellants

v.

Antony L. Blinken, in his official Capacity, Succeeding Michael
Richard Pompeo as Secretary of State; The United States Department
of State; The United States; Co-Conspirators (Pseudonym)

      Defendants-Appellees

---

**On Appeal From**
Appeal from the United States District Court for the District of Columbia
Case No 1:19-cv-02316-RC

The Honorable Rudolph Contreras

---

**Appellants' Brief**

---

(Unrepresented)

# CERTIFICATE OF INTERESTED PERSONS

The Appellant David Alan Carmichael, ECF Filer, hereby certifies the following listed persons have an interest in the outcome of the case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

**Appellants** (All are unrepresented):

David Alan Carmichael    - Appellant

Lawrence Donald Lewis    - Appellant

Michelle Boulton          - Appellant in related case 22-5143

Rick Dale Hollingsworth  - Appellant in related case 22-5143

William Mitchell Pakosz  - Appellant in related case (deceased)

Leslie Young Carmichael - Witness for Appellants

Anthony Michael Mahoney – Witness for Appellants

**Appellees**

Christopher Hair          - Attorney U.S. Justice Department, Civil Division

Stephen DeGenaro          - Attorney U.S. Justice Department, Civil Division

David James Byerley       - Attorney U.S. Justice Department, Civil Division

Jonathan Rolbin           - U.S. Department of State

Kristia Watkins           - U.S. Department of State

i

Paul Peek                    - U.S. Department of State

Christine McClean            - U.S. Department of State

Steven Miller                - U.S. Department of State

Antony L. Blinken            - U.S. Department of State, Secretary of State

Michael Richard Pompeo - Former Secretary of State


ss: *David Alan Camichael*
David Alan Carmichael, Appellant, ECF Filer
1748 Old Buckroe Road
Hampton, Virginia  23664

ii

**23-5111**

## TABLE OF CONTENTS

Certificate of Interested Persons ................................................................i

Table of Contents ................................................................ iii

Table of Authorities ................................................................v

Jurisdictional Statement ................................................................1

Statement of Issues................................................................1

Statement of the Case................................................................2

Case Summary ................................................................14

Article III................................................................15

Case Is Not Moot Where Damages Relief Is Due ................................................15

Damages Are Appropriate Relief Under RFRA ................................................16

Injuries Warrant Damages Under RFRA................................................18

Damages Relief Is Due For Violation of Statute ................................................20

Case and Controversy Remains Where Government Continues ...........................21
    Unlawful Conduct

Count One – Violation of 22 U.S.C. § 2721 Erroneously Dismissed ....................26

Carmichael's Fifth Amendment Claim Erroneously Dismissed ............................30

Court Erroneously Demanded An Unreasonable Pleading Standard ....................33

22 C.R.F. § 51.60(f) Is Unconstitutional for Vagueness and Overbreadth ............34

(Page 4 of Total)

Aptheker Identifies Unlawful Restraint Cause of Action .........................................35

22 C.F.R § 51.60(f) Parallels Unconstitutional Statute in *Aptheker*........................36

District Court Erred Denying Lewis's Injunctive Relief .........................................37

The Court Arbitrarily Set Bar Too High on Lewis Motion to Compel ..................39

Court Abandoned the Judiciary in its Administrative Order ..................................41

Declaratory Relief Based on Discoverable Facts Determines Appropriate ...........42
    Relief for Revoked Passport

Relief ........................................................................................................45

ADDENDA

Carmichael Signature ................................................................................ A-1

Lewis Signature....................................................................................... A-2

Certificate of Compliance ...................................................................... A-3

iv

23-5111

# TABLE OF AUTHORITIES

## United States Constitution

Article III ................................................................. 1, 15, 17, 26, 35, 44, 45
    *Judiciary*

First Amendment ......................................................... 4, 26, 27, 28, 29, 30, 33
    *Free Exercise of Religion*

Fifth Amendment................................2, 4, 5, 9, 12, 16, 20, 30-35, 39, 42, 45
    *Due Process*

Ninth Amendment .........................................................................................23
    *Rights Reserved*

## United States Supreme Court

\*    *Aptheker v. Secretary of State*......................................... 20, 29, 34, 35, 36, 37
    378 U.S. 500 (1964)

*Armstrong v. Manzo*.......................................................................................32
    380 U.S. 545 (1965)

*Birdsall v. Coolidge,* .....................................................................................19
    93 U.S. 64 (1876)

*Cantwell v. Connecticut*..................................................................................37
    310 U.S. 296 (1940)

*Carpenters Union v. Labor Relations Board* ...............................................24s
    341 U.S. 707 (1951)

*City of Mesquite v. Aladdin's Castle, Inc.*......................................................23
    455 U.S. 283 (1982)

*Ex Parte v. Endo* ........................................................................37
    323 U.S. 283 (1944)

*Ford Motor Co. v. Labor Board* ...................................................41
    305 U.S. 364 (1939)

*Friends of the Earth, Inc. v. Laidlaw Environmental Services* ....................23
    528 U.S. 167 (2000)

*Haig v. Agee* ........................................................................31, 32
    43 U.S. 280 (1981)

*Hecht Co. v. Bowles* ................................................................24
    321 U.S. 321 (1944)

*Jacob Siegel Co. v. Federal Trade Commission* ............................................41
    327 U.S. 608 (1946)

*Kent v. Dulles* ........................................................................20, 35, 36
    357 U.S. 116 (1958)

*Louisiana ex rel Gremillion v. NAACP* ........................................................37
    366 U.S. 293 (1961)

*Martin v. Struthers* ................................................................37
    319 U.S. 141 (1943)

*Matthews v. Eldridge* ................................................................32
    424 U.S. 319 (1976)

*Memphis Comm. Sch. Dist. v. Stachura v.* ....................................................18
    477 U.S. 299 (1986)

*NAACP v. Alabama* ....................................................................37
    377 U.S. 288 (1958)

*NAACP v. Button* ....................................................................37
    371 U.S. 415 (1963)

*Schware v. Board of Bar Examiners* ............................................................37
    353 U.S. 232 (1957)

vi

*Schneider v. State*.................................................................................37
    308 U.S. 147 (1939)

*Shelton v. Tucker* ...............................................................................37
    364 U.S. 479 (1960)

*Spokeo, Inc. v. Robins* .......................................................................15
    578 U.S. 330 (2016)

*Super Tire Engineering v. McCorkle*..................................................25
    416 U.S. 115 (1974)

*Tanzin v. Tanvir* ................................................................................17
    592 U.S. _____ (2021)

*United States v. Concentrated Phosphate Export Assn., Inc.* ......................23
    393 U.S. 199 (1968)

*United States v. Trans-Missouri Freight Assn.* ............................................24
    166 U.S. 290 (1897)

*United States v. W.T. Grant Co.* ...........................................................22, 24
    345 U.S. 629 (1953)

\*    *Uzuegbunam, et al., v. Preczewski, et al*...................................14, 16, 17, 18
    592 U.S. _____ (2021)

*Walling v. Helmerich & Payne, Inc.* .........................................................24
    323 U.S. 37 (1944)

*Washington State v. Grange* ...................................................................33
    552 U.S. 442 (2008)

**United States Court of Appeals**

*Burlington N. R.R. Co. v. Surface Transp. Bd.*..............................................25
    75 F.3d 685 (D.C. Cir. 1996)

*Carmichael v. United States* .......................................................................3
    298 F.3d 1367 (Fed. Cir. 2002)

vii

*Church of Scientology v. United States* ........................................................25
    485 F.2d 313 (9th Cir. 1973)

*Church of Scientology of Cal. v. United States* ............................................43
    506 U.S. 9 (1992)

*Cuomo v. U.S. Nuclear Regulatory Comm'n* ................................................38
    772 F.2d 972 (D.C. Cir. 1985)

*Del Monte Fresh Produce Co. v. United States* ............................................25
    570 F.3d 316 (D.C. Cir. 2009)

*Labor Board v. General Motors Corp.,* ........................................................25
    179 F.2d 221 (2nd Cir. 1950)

\*   *Limnia, Inc. v. U.S. Dep't of Energy* .......................................................6, 46
    857 F.3d 379 (D.C. Cir. 2017)

*Occidental Petroleum Corp. v. SEC* .............................................................32
    873 F.2d 325 (D.C. Cir. 1989)

*Peterson v. U.S.* ...........................................................................................21
    694 F.2d 943 (3rd Cir., N.J. 1982)

*United States v. Aluminum Co. of America* ..................................................24
    148 F.2d 416 (2nd Cir. 1945)

*United States v. Ford* ...................................................................................25
    650 F.2d 1141 (9th Cir. 1951)

*United States v. Seeger* ...............................................................................30
    380 U.S. 163 (1965)

*Webb v. Portland Mfg. Co.* ..........................................................................18
    29 F. Cas. 506 (C.C. Me. 1838)

## United States District Court

\*   *Carmichael v. Pompeo*.........................................................................................
    486 F.3d 360, U.S. Dist. (D.C. Aug 28, 2020) (ECF 45)

*Carmichael v. Pompeo* .................................................................................1
    1:19-cv-02316

*Ferrell v. Tillerson* .....................................................................................32
    315 F. Supp. 3d 47 (D.D.C. 2018)

*Kirwa v. United States Department of Defense* ...........................................38
    285 F. Supp. 3d 21 (D.D.C. 2017)

*McNeil-PPC, Inc. v. Granutec, Inc.* ...........................................................38
    919 F. Supp. 198 (E.D.N.C. 1995)

## United States Court of Federal Claims

*Carmichael v. United States* .........................................................................3
    66 Fed. Cl. 115 (2005)

## State Supreme Courts

\* *Cromartie v. Billings* ...............................................................................20
    837 S.E.2d 247 (2020)

*Green v. Ingram* ........................................................................................20
    269 Va. 281

\* *Griffin v. Clark* .................................................................................19, 20
    55 Idaho 364 (Idaho 1935)

*Tweedy v. J.C. Penny Co.* ...........................................................................20
    216 Va. 596 (1976)

*Woods v. Mendez* .......................................................................................20
    265 Va. 68 (2003)

*Zayre of Va., Inc. v. Gowdy* .......................................................................19
    207 Va. 47 (Virginia 1966)

## Courts of England Reports

*Barker v. Green* .........................................................................................17
    130 Eng. Rep. 237 (C. P. 1824)

ix

*Dods v. Evans* ..............................................................................17
    143 Eng. Rep.929 (C. P. 1864)

*Hatch v. Lewis* ..............................................................................17
    175 Eng. Rep. 1145 (N.P. 1861)

*Marzetti v. Williams* ......................................................................17
    109 Eng. Rep. 842 (K. B. 1830)

## United States Statutes

Administrative Procedures Act (APA) ................................................1, 26, 43

Federal Tort Claims Act (FTCA) ......................................................16, 21, 46

Foreign Relations Authorization Act of 1991 ........................................26, 27
    State Department Basic Authorities Act of 1956
    U.S P.L. 102-138 (Oct. 28, 1991) 105 STAT 655, Sec. 113
    *Denial of Passports*

Fixing America's Surface Transportation Act ...............................................34
    U.S. P.L 114-94, 129 STAT 1732
    §§32101(f)

Religious Freedom Restoration Act (RFRA) .... 1, 4, 14, 16-18, 21, 29, 30, 46

Subversive Activities Control Act...............................................................25

## United States Code

5 U.S.C. § 552a........................................... 1, 2, 5, 16, 20, 21, 45
    *The Privacy Act*

5 U.S.C. § 701-706 ...............................................................................1, 45
    *Administrative Procedures Act*

18 U.S.C. § 242......................................................................................20
    *Deprivation of Rights Under Color of Law*

22 U.S.C. § 2714(a)(f) ..................................................................29, 33, 34, 35
    *Revocation or denial of passport in case of certain unpaid taxes*
    *Revocation or denial of passport in case of individual without*
    *Social Security Account Number*

\*    22 U.S.C. § 2721......................................... 4, 5, 26, 27, 28, 29, 30, 45
    *Impermissible Basis For The Denial of Passports*

28 U.S.C. § 1291..................................................................................1
    *Final decisions of district courts*

28 U.S.C. § 1331..................................................................................1
    *Federal question*

28 U.S.C. § 1346.............................................................................16, 21
    *Federal Tort Claims Act*

28 U.S.C. § 1361............................................................................1, 45
    *Action to compel an officer of the United States to perform*
    *His duty*

28 U.S.C. § 2201..................................................................................1
    *Creation of remedy*

28 U.S.C. § 2202............................................................................1, 45
    *Further relief*

28 U.S.C. § 2674.................................................................................21
    *Liability of United States*

42 U.S.C. §408.............................................................................16, 20
    *Penalties*

42 U.S.C. §2000bb........................... 1, 4, 16, 21, 27, 29, 30, 45, 46
    *Religious Freedom Restoration Act*

## Code of Federal Regulations

22 C.F.R. § 51.26...........................................................................8
    *Photographs*

xi

22 C.F.R. § 51.60(f)................................. 2, 4, 5, 31, 33, 34, 35, 36, 37, 45, 46
    *Denial and restriction of passports*

22 C.F.R. § 51.70.......................................................... 31, 34, 35, 36, 37, 45
    *Request for hearing to review certain denials and revocations*

**Foreign Affairs Manual**

\*    8 FAM 402.1...............................................................8, 9, 38, 39, 41
    *Passport photographs*

**Rules of Court**

Rules of Appellate Procedure .........................................................................1
    Rule 4(a)(1)(B) – Appeal as of Right – When Taken

## JURISDICTIONAL STATEMENT

1.  The D.C. District Court had original jurisdiction pursuant to 28 USC §§ 1331, 1346, 2201; 42 USC § 2000bb (Religious Freedom Restoration Act- RFRA); 5 USC §§ 552a (Privacy Act) and 701-706 (APA).  The complainants (Appellants) were injured by denial and revocation of their passport renewals in violation of the Constitution and laws of the United States.  Injunctive relief or other further appropriate relief is available by 28 USC §§ 1361 and 2202; 42 USC §2000bb, 5 USC §§552a and 701-706.

2. The District of Columbia Circuit Court has jurisdiction under 28 USC §1291 from the final decision of case no. 1:19-cv-02316, disposing of all parties' claims, ECFs 149, 150, March 20, 2023.  The appeal was filed May 15, 2023, meeting the May 19th, 60-day deadline of Rule 4(a)(1)(B).

## STATEMENT OF ISSUES

3. The dismissal order should be vacated.  The case is not moot since:  a) Adjudication and damages relief remains owed under RFRA;  b) Declaratory relief remains owed under 28 USC § 2201;  c) Injunctive relief remains owed under 28 USC § 2202; d) The agency record and actions demand review and relief by record correction and money damages under 5 USC 552a(g);  e) The complainants used the term co-conspirators to indicate tortfeasors liable for damages in their individual capacity since their actual names were cloaked by pseudonyms such as

Customer Service Department.  f)  Declaratory and equitable relief is owed under the Administrative Procedures Act (APA) as an alternate remedy.

4. The dismissal of Count 1 of the complaint must be vacated where the facts are adequately alleged to show the prohibitive statute applies to the tortfeasors who are prohibited from denying and revoking passports under the circumstances.

5. The dismissal of Count 4, as to Carmichael, must be vacated since his passport was revoked without due process.  Pre-revocation notice should have given him for an opportunity to enjoin the agency action prior to its being operative.

6. The Dismissal of Count 5, as to the unconstitutionality of 22 CFR §51.60(f) must be vacated since it was adequately pled and is unconstitutional.

## STATEMENT OF THE CASE

7. The statement of the case is necessarily large due to the District Court's abuse of discretion, abandonment of rules, bias against the complaints, ignoring of black-letter law, and ignoring the Government its Attorney's misconduct.

8. The unlawful conduct of the Government (Appellees) was discovered by Carmichael when Plaintiff Pakosz contacted Carmichael and told him that the government had denied is passport renewal applications in 2017 and 2018 (ECF 1, p. 2, ECF 46-2, p. 4) notwithstanding his request for religious accommodation to not identify with a Social Security Number (SSN).

9. Carmichael's passport renewal had been approved in January 2018, where he had requested the same religious accommodation.  They had both requested the same accommodation in 2007 and their passports were issued.  In his 2018 religious accommodation request, Carmichael cited his successful litigation over the issue, *Carmichael v. United States*, 298 F.3d 1367, Fed. Cir. (2002); 66 Fed. Cl. 115 (2005) in his 2018 request for religious accommodation (ECF 46-2, pp. 13-14).

10. Being given Pakosz power-of-attorney, Carmichael intervened and contacted the passport agency for Pakosz.  Carmichael was told the agency had no discretion but to deny passports for applicants not identifying with a SSN, there was no religious exemption process, and no appeal (ECF 46-2, pp. 4, 6, 11, 31). Carmichael, Pakosz and others sent correspondence to the White House asking for access to the "Religious Freedom Task Force" regarding the State Department's failure to accommodate religion for passports (*Id.*, p. 31).  In response to White House correspondence, the Government wrote a letter to Carmichael essentially explaining, no SSN – no passport – no appeal (*Id.,* p. 11).  Without notice of a discrepancy in Carmichael's 2018 passport renewal, or an opportunity to respond, the Government notified Carmichael that his passport was revoked due to his not providing a SSN, making no mention of his request for religious accommodation. The revocation letter cited a regulation regarding appeal, but that regulation

excluded appeal for the basis of revocation which was 22 CFR § 51.60(f).

11. Carmichael filed suit July 31, 2019.  Carmichael moved to join Pakosz and Lewis in Sept., 2019 (ECFs 5,6).  It was granted Nov. 20, 2019, (ECFs, 11). Carmichael first moved for a Scheduling Conference November 12, 2019 (ECF 10, p. 2, ¶8).  The Court ignored the scheduling conference motion (ECF 11). Carmichael reiterated notified the Court to his ongoing injuries and reiterated his Scheduling Conference Motion (ECF 13, p. 3, ¶s 9-10, 15) and reiterated again (ECF 20, p. 6).

12. The Government moved to dismiss (Jan. 17, 2020, ECF 24), submitting conclusory, hearsay declarations with no supporting evidence.  Complainants responded filing statements of undisputed fact, and disputed fact that contradicted the declarations of the Government; and cross-moving for Summary Judgment on the First Cause of Action, violation of 22 USC § 2721 prohibition of denial of passports for things protected by the First Amendment (17 Feb. 2020, ECF 27), with their memorandum in support (ECF 27-1), "Statement of Disputed Facts" (ECF 27-2), "Submission of Undisputed Facts . . . Relevant to First Cause of Action" (ECF 27-3).  The Appellants' Reply to the Government's opposition to the cross-motion for summary judgment on the first cause of action was buried by the clerk (ECF 35-1).

13. The District Court ruled Complainants had standing on their RFRA, Due

Process (Except for Carmichael) and Privacy Act claims. It the claim about violation 22 USC § 2721 saying it was inadequately pled (ECFs 44 / 45)  (*Id.* 45, p. 24).

14. Complainants filed an amended complaint by invitation of the Court (ECF 45, p. 24) regarding Carmichael's due process claim, where they reiterated the claim that 22 CFR § 51.60(f) was unconstitutional ECF 46, motion; 46-1 Mem. in Support, 46-2, Exhibits with Amended Complaint which was filed later as ECF 51).  They also filed objections (ECF 47) to the order and opinion (ECF 44 / ECF 45) order and opinion.

15. Complainants submitted their discovery motion proposal to the Government on October 20, 2020 (Exposed to the Court at ECF 54, pp. 14-35), with mandatory disclosure items discussed on pages 28 through 32.

16. The Government began a series of motions to evade an answer, discovery, and judgment on the merits, under the guise of a frivolous dilatory motion for remand (ECFs  50, 52, 61, 66, 67).  Prior to the Government's status report (ECF 52), Appellants filed a motion to schedule discovery (ECF 55), and a preemptory challenge, predicting the guise for the remand was frivolous (ECF 54), since:  1) Plaintiffs are adequately identified in the records of the agency,  2) The Government explained in their dismissal motion that they accommodated unnumbered applicants for non-religious reasons;   3) Their plan would be a one-

sided discovery in bias against the plaintiffs;  4) Discovery or a complete record on

review would expose the motion's frivolity;  5) The Government's duty was to

issue Lewis's passport and void the revocation of Carmichael's.  Appellants each

filed documents to refute the fguise of a remand motion (ECFs, 56, 57 / 59, 60).

The complainants' briefs in opposition to the remand were comprehensive yet the

merits seem to have been ignored (ECFs 63, 65, 68, 70).

17. The Court by way of fiat Minute-Order, Jan. 20, 2021, imposed a dismissal

of the Complainants' causes of action, with prejudice, against the rule in *Limnia,*

*Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017) (Briefed ECF 65,

pp. 17-18).  The Court stayed the proceedings, ordered, "Notwithstanding

Plaintiffs' argument that no further information is required from them to adjudicate

their requests for accommodation (because their identity is not at issue given their

submission of their prior passports by mail), Plaintiffs are encouraged to comply

with Defendants' reasonable requests for further information in furtherance of

Defendants' efforts on remand. The refusal by Plaintiffs to provide such requested

information, if the Court finds that Defendants' new requests were justified, may

serve as a basis for the State Department to legitimately deny the requests for

accommodation."

18. Complainants objected to the remand order and moved for reconsideration

(ECF 71/72, Reply 78).  They moved for declaratory judgment on the Remand

order (ECF 75), followed by a lift of stay motion to consider the declaratory

judgment motion (ECF 76).

19. Without an order to lift the stay, the Court reacted to the Complainants'

February 25th motion by issuing an order on Feb. 26th for the Government to

produce a status report (Min. Order, Feb. 26, 2021 (Append.).

20. The litigation Attorney reported on March 5, 2021, by hearsay, that the

agency was satisfied with the sincerity of the beliefs and the adequacy of the

citizenship and identity information previously provided by the complainants (ECF

80).  There was no evidence of the agency record nor evidence of the agency

communicating to the complainants since the agency had not communicated to

them.  The status report then said, "Accordingly, the Department is inviting

Plaintiffs to submit Form DS-82, U.S. Passport Renewal Application for Eligible

Individuals, with new photographs, using the following instructions: . . . Plaintiffs

must send their completed applications, along with a new photograph that

conforms with instructions included in the Form DS-82, to the below address:"

21. The complainants protested the Court, litigation Attorney and

Government's litigation conduct saying, "The Status Report shows that the

Defendants have a duty to approve the passport-renewal applications of (Lewis),

and rescind the revocation Carmichael's passport, in accordance with the promises

in their remand motion documents" (ECF 82, p. 1).  They further accurately

protested under the headers, "The Non-New-Agency-Action Shows That The Remand Premise Was False" and "The Defendants Are Playing The Court And The Plaintiffs, By Baiting The Court To Distraction, And Baiting The Plaintiffs To Tactical Suicide" (ECF 82, p. 1 and 3).  The complainants reiterated the duty of the Court to adjudicate the case.

22. Thirty one days later, the Court made a summary judgment by fiat Minute Order, April 19, 2021, saying, "The Court does not intend to dissolve the remand order. . . .  Plaintiffs are encouraged to comply with Defendants' reasonable requests for further information in furtherance of Defendants' efforts on remand. The refusal by Plaintiffs to provide such requested information, if the Court finds that Defendants' new requests were justified, may serve as a basis for the State Department to legitimately deny the requests for accommodation." . . . the Court is perplexed by Plaintiffs', apparent, refusal to take advantage of that opportunity. . ."

23. The same day, the agency denied (Lewis's) passport renewal applications as second time, saying that they "refused to voluntarily provide a new passport photograph" saying a new photograph was required to be taken within six months of the "issue date" relying on their department prescription which is "8 FAM 402.1."  The actual prescription is, "(2)  The photograph must be taken within the past six months . . . at the time of the **application** (see 22 CFR 51.26)  If there is no indication that the photograph was taken earlier, you may assume that the

photograph was taken on the date the form DS-11 was executed or the date the form DS-82 or form DS-5504 was signed." 8 FAM 402.1-2(2) (ECF 84-8). Simultaneously, the Government issued a replacement passport for Carmichael notwithstanding that a new photograph and application is in fact requisite for a "replacement" passport.  Carmichael's photo was older than the photo of Lewis and Pakosz.  It was a moot-the-case litigation scheme.

24. (Lewis) filed a motion to compel the issuance of (his) renewed passport (ECF 84, 84-1, 84-2, 84-3, 84-4, 84-5, 84-6, 84-7, 84-8, 84-9).

25. The complainants filed a motion for relief from judgment or order, giving notice of the agency's continued misconduct on their webpage.  They explained they were acting in loyalty to the law in contrast to the Government.  They explained that the Court's inappropriate comments in its remand order baited the Government to commit further violations of the complainants' rights (ECF 85/86).

26. Appellants objected to the Court's minute orders of May 7, 2021 (ECFs 88, 89, 90, 91) that ignored the rules and the merits of their motions, where:

> . . . c) The Plaintiffs continue to be in a state of *ne exeat republica* without due process, with our passport application being denied contrary to law. d) The Defendants have admitted that, as a matter of law, our passport applications should have been approved rather than denied.  e) The Defendants have made no allegation that our photographs were not valid at the time of the application.  f) The Defendants have shown no evidence that there is any regulation that requires the passport photograph to be current within six months of an unpredictable "issue" date.  g) The Defendants have not rebutted any of our judicial notices of the regulations that show the passport photo must be current within six months of the

"application" date.  h) The Court continues to show a gross indifference to the law regarding the remedy and due process instituted by the Congress through positive law and their oversight of the Rules of Court.  i) The Court continues to show a gross indifference to law and facts of the case which are plead for, and relied upon, by us." (ECFs 88, 89)

27. Carmichael objected by argument of fact and law to the Court's declaration that the 'replacement' passport issued ultra vires was legitimately his (ECF 90).

28. Complainants moved to join another injured party, Boulton. Pakosz died and a relative moved to succeed him.  Their case is on appeal, case no. 22-5143.

**Pertinent to this case and its continuing controversy**, Boulton was denied passport renewal for her not identifying with a SSN due to her religion, even after she had alerted the adjudicators to the status report (ECF 80) promise of religious accommodation.  They only renewed Boulton's passport only at the last possible delay when they faced scrutiny under litigation (ECF 105).

29.  Carmichael sent the unsigned pseudo passport to the Court, saying, "I move the Court to hold the passport document #658435211 in the Court's custody pending the Court's declaration of law regarding which passport ought to be the one that is valid as a matter of law." (ECF 101, p.3)

30. The Government filed another motion to dismiss (ECF 99, 117 Reply). Carmichael and Lewis responded (ECF 106) providing declarations of facts and evidence of law to support their opposition (106-1, 106-2, 106-3, 107-1).

31. Carmichael and Lewis filed a timely motion for relief from the previous

year's dismissal of their First Cause of Action (ECFs 108, 119 Reply).

32. On March 25, 2022, the District Court dismissed all of the motions of the complainants. It granted all of the dismissal motions of the Government except the question of the legitimacy of the second denial of Lewis's passport and the replacement passport intended for Carmichael (ECF 124, 125). Appellants opposed the order, comprehensively (ECF 127), providing instances of people denied or granted religious accommodation depending on whether they threatened to join the litigation (ECFs 127, pp. 1-2, 6-7, 127-1, 127-2, 127-4).

33. All complainants filed an appeal to the D.C. Circuit Court on May 19, 2022 (ECF 132).

34. On May 24, 2022, the Government filed a status report with a declaration by Paul Peek, Director of Passport Adjudication, that admitted that Lewis had been 100% correct regarding his 2019 passport not needing a new photograph (ECF 136, 136-1). They made an excuse that "unbeknownst" to the Department, a new instruction had come along that changed the requirement. It was later proven to be a false statement when the new and old documents were compared. Mr. Peek admitted that, "When the Department mistakenly revokes a passport, it can retract its notification so long as it is done immediately (within one day) after the original notification is sent." He provided no documentation that the "within one day" limitation is absolute. He only speculated to the inconvenience to Mr. Carmichael

"being detained or delayed overseas or domestically for traveling on what might be believed is an invalid and/or revoked passport." (ECF 136-1).

35. Complainants objected with:

"The Defendants have admitted that their statements were false, . . . that a new photograph was necessary." (ECF 137, p. 2, ¶ 4)

"By the Courts' abuse of discretion to this point, there is no authenticated evidence to support any of the merely conclusive allegations of the Defendants in their status report or the Declaration of Paul Peek. Again, the Plaintiffs are denied access to the due process of discovery, being subjected to the Defendants' exhibits that do not qualify as evidence according to the rules of evidence." (*Id.*, p. 2, ¶ 5)

"Plaintiff Lewis objects to the fact that instead of sending him a letter of a second denial of his passport renewal application, the Defendants were duty bound to issue the renewed passport to him on that very same day that they issued a quasi-replacement passport for Carmichael. It certainly could have been accomplished on March 26, 2022, the day after the court pointed out that the Plaintiffs were correct, that the law and facts did not support the Defendants contention of a justification for the second denial of passport renewals to Pakosz and Lewis. Yet…. Look what the Defendant continues to do…. They promise the court that someday they intend to issue a renewal passport to Lewis. They did not tell him or the court whether he can make plans for his ordinary religious pilgrimage to for a Sebach Hag Succoth (Happy Feast of Tabernacles) with his religious fellowship in Canada. He remains chained in false arrest until who knows when. Each day is another day of false imprisonment, actionable as a matter of law, though not yet actionable in the U.S. District Court without scrutiny and mandate of a higher court." (*Id.*, p. 3, ¶ 8)

"Without the scrutiny that we demand in our complaint, the Defendants are likely to continue their trend to evade the application of law and the protection of the rights of passport applicants unless coerced to do so." (*Id.*, p. 4, ¶ 10)

"What is are the Defendants waiting for with regard to the issuance of Lewis's renewed passport? They have a duty to issue the thing. . . . Promise

of future obedience to the law is not evidence of obedience to the law. The Defendants have a duty to obey the law notwithstanding litigation status, especially since there is no question regarding their duty to issue the renewed passport to Mr. Lewis."  (*Id.*, p. 5, ¶ 11)

"None of the Plaintiffs will be "paid-in-full" (obtained complete relief) until their complaint is fully adjudicated, a judgment is a matter of record, and all damages as a matter of law as well as equity are fully paid from all liable parties; or until there is a substantive consent decree where the Plaintiffs, their posterity, and those of their religious community can be reasonably sure that they will not be subjected to the same lawless persecution and torment by the Defendants, and suitable compensation can salve some of the hurt to the lives and liberties of the Plaintiffs." (*Id.*, p. 6, ¶13)

36. They attached communications with the U.S. Attorney explaining that the "unbeknownst" assertion was false and the requirement that the photograph currency being linked to the application date had not changed (ECFs 137-1, 137-2, 137-3, 137-4).

37. In reaction to the Response (137/137-1,2,3,4), the District Court ordered, "It is hereby ORDERED that the Government send Mr. Lewis his passport at the address he provided in ECF No. 137-3."  There was no declaratory judgment, discovery, exposure of individual culpability, just the machinery to try to moot the case.  Carmichael was ordered to "convey how he wants to take possession of his passport" notwithstanding Carmichael's demand for the rescission of the passport revocation was promised in the Government's remand motion reply (ECF 66, p. 5). The Court then took tactical control of the Government's case, and ordered them to "file any dispositive motion, on mootness or other grounds."  (ECF Min. Order,

May, 25, 2022).  The complainants filed objections (ECF 138).

38. The Government filed a dismissal motion (ECF 140, Reply 148).

Appellants responded with government documents that disproved the

Government's arguments (ECF 144, 144-1, 144-2, 144-3, 144-4, 144-5, 144-6).

The same day, Appellants moved for "leave to amend the complaint" copying their

style of the U.S. Attorney asking for leave to move for remand, since the Court has

discretion and typing up a new complaint would be a waste of time with the glaring

bias of the Court (ECF 143).

39. The District Court dismissed the case with prejudice against the

complainants, March 20, 2023 (ECF 149, 150).  March 29, 2023, Appellants filed

objections (ECF 151), with newly discovered documents that contradicted the

Government and Court's assertions (ECF 151-1, 151-2, 151-3).  Appellants filed a

timely notice of appeal May 15, 2023 (ECF 152).


**CASE SUMMARY**

40. The District Court erroneously dismissed the case under the guise of

mootness, though damages, declaratory, and injunctive relief is due.  Damages

were demanded in the complaint.  The complainants used the term "co-

conspirators" for the tortfeasors whose names were cloaked with pseudonyms such

as "Customer Service Department."  Money damages, including nominal, is

"appropriate relief" under RFRA according to *Uzuegbunam, et al., v. Preczewski*,

592 U.S. ___ (March, 2021).  There remains a case and controversy with

inappropriate relief being offered Carmichael; and he continues to be contacted by

people suffering the same injury of having their religious accommodation requests

being completely ignored.  Exposure of the systemic dysfunction by discovery has

been denied in a clear-the-docket for the sake-of-efficiency at the cost-of-justice

protocol.  The case is ripe for *de novo* review, declaratory judgment, vacating and

remand for discovery and full adjudication on the facts and merits.

## ARTICLE III STANDING

41. We, Appellants, sufficiently alleged facts that we were injured in our

natural rights in violation of the Constitution and the laws of the United States.

The complaint expressly alleges, or it is deducible, that we have an injury in fact,

traceable to the challenged conduct, and that a money relief is one of the means

necessary to redress the injury (ECF 51).

> To satisfy the "`irreducible constitutional minimum'" of Article III standing, a plaintiff must not only establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, but he must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)

## CASE IS NOT MOOT WHERE DAMAGES RELIEF IS DUE

42. The District Court unjustly dismissed the case with prejudice under the false

premise that damages relief was not available (ECF 124, 125) and the case was

moot (ECF 149, 150).  A money judgment is called for against the United States

and persons in their private capacity called "co-conspirators" in the complaint

p. 15 of 48

(ECF 51, ¶7).  Their identities were cloaked under names such as "Customer Service Department."

43. We alleged that the tortfeasors' actions were intentional, willful, malevolent, with hostility, and were causal to the violations of law, where the Religious Freedom Restoration Act, the Privacy Act, and the Federal Tort Claims Act, provide remedy and relief.  (Am. Comp., ¶¶ 95, 108, 109, 110, 111, 11;, Amend. Two ¶ 1., 2., 13, 18., 19, 20, 21, 25; 116, 118, 119, 124.f.-k, , 119, 125. 128, 140. Such conduct, violating the laws of the United States, including the Privacy Act, are felonies according to 42 U.S.C. ¶ 408(a)(8).

44. The Defendants were **not** entitled to the grant of their motions for dismissal or summary judgment as a matter of law, fact, and due process (ECFs 44, 45, 124, 125, 149, 150) since damages relief is due.  Culpability and relief will be proved upon completion of discovery.  Review is *de novo*.

## DAMAGES ARE APPROPRIATE RELIEF UNDER RFRA

45. The remedial RFRA's use of the broad term "appropriate relief" means damages payments are available for an injury-in-fact by the United States through its agents acting in their official capacity, or by its agents who are liable in their private capacity for their unlawful acts done under the color or law.

46. In the case of *Uzuegbunam, et al., v. Preczewski*, et al., the Supreme Court declared that the Government's discontinuance of a challenged policy did not leave

the injured party without standing to sue.  Nominal money relief is available even

where an amount of compensatory damages cannot be proved, satisfying the

redressability necessary for Article III standing where a plaintiff's claim is based

on a completed violation of a legal right. *Uzuegbunam, et al., v. Preczewski*, et al.,

141 S.Ct. 792, 797-802 (2021)

47. Money is claimed as relief due. (Amend. Compl., Mem. Attach 9., pp. 59-

62; ECF 46-2, pp. 80-83 & ECF 51, p. 61).   Appropriate relief under RFRA was

not understood by the plaintiffs until explained by the Supreme Court during this

litigation.  Compensation relief was declared by the Supreme Court, Dec. 10, 2020,

in *Tanzin v. Tanvir*, 592 U.S. ____ (2020).  Compensation without knowing the

*Tanzin* rule is found at Complaint, ECF 51, ¶ 147.  Under the rule in *Uzuegbunam,*

*n*ominal damages are "appropriate relief" if other monetary relief demanded is not

provable, ECF 51, ¶s 143-148.

> Later courts, however, reasoned that *every* legal injury necessarily causes
> damage, so they awarded nominal damages absent evidence of other
> damages (such as compensatory, statutory, or punitive damages), and
> they did so where there was no apparent continuing or threatened injury
> for nominal damages to redress. See, *e.g., Barker v. Green,* 2 Bing. 317,
> 130 Eng. Rep. 327 (C. P. 1824) (nominal damages awarded for 1-day
> delay in arrest because "if there was a breach of duty the law would
> presume some damage"); *Hatch v. Lewis,* 2 F. & F. 467, 479, 485-486,
> 175 Eng. Rep. 1145, 1150, 1153 (N. P. 1861) (ineffective assistance by
> criminal defense attorney that does not prejudice the
> client); *Dods* v. *Evans,* 15 C. B. N. S. 621, 624, 627, 143 Eng. Rep. 929,
> 930-931 (C. P. 1864) (breach of contract); *Marzetti* v. *Williams,* 1 B. &
> Ad. 415, 417-418, 423-428, 109 Eng. Rep. 842, 843, 845-847 (K. B.
> 1830) (bank's 1-day delay in paying on a check); *id.,* at 424, 109 Eng.

Rep., at 845 (recognizing that breach of contract could create a continuing injury but determining that the fact of breach of contract by itself justified nominal damages). *Uzuegbunam, et al., v. Preczewski*, et al., 141 S.Ct. 792, 798 (2021). ***

Applying what he called Lord Holt's "incontrovertible" reasoning, Justice Story explained that a prevailing plaintiff "is entitled to a verdict for nominal damages" whenever "no other [kind of damages] be proved." *Webb v. Portland Mfg. Co.,* 29 F.Cas. 506, 508-509 (No. 17,322) (CC Me. 1838). Because the common law recognized that "every violation imports damage," Justice Story reasoned that "[t]he law tolerates no farther inquiry than whether there has been the violation of a right." *Ibid.* Justice Story also made clear that this logic applied to both retrospective and prospective relief. *Id.,* at 507 (stating that nominal damages are available "wherever there is a wrong" and that, "[a] fortiori, this doctrine applies where there is not only a violation of a right of the plaintiff, but the act of the defendant, if continued, may become the foundation, by lapse of time, of an adverse right"). *Uzuegbunam, et al., v. Preczewski*, et al., 141 S.Ct. 792, 798

48. We intend to prove compensatory damage, but where compensatory damage cannot be quantified at trial, nominal damages are appropriate relief by default.

They are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages. See, *e.g., Dods,* 15 C. B. N. S., at 621, 627, 143 Eng. Rep., at 929, 931 (prevailing plaintiff entitled to nominal damages as a matter of law even where jury neglected to find them); see also *Stachura,* 477 U.S. at 308, 106 S.Ct. 2537 (rejecting the argument that courts could presume, without proof, damages greater than nominal). *Uzuegbunam,* at 800

## INJURIES WARRANT DAMAGES UNDER RFRA

49. Like in *Uzuegbunam,* the Defendants completed a violation of our constitutional rights. With wanton, willful, intelligent; and not merely negligent but reckless disregard for statutory obligations and prohibitions protecting us from

government coercion, they demanded that we abandon our religious practice or be

denied rights, benefits, and privileges, and suffer unlawful detention.

> Damages are given as a compensation, recompense, or satisfaction to the plaintiff, for an injury actually received by him from the defendant.  2 Greenl. Ev. (10th ed.) sect. 253.  *Birdsdall v. Coolidge*, 93 U.S. 64 (1876)

50. The restraint of our travel liberty constitutes false imprisonment.  In the

States where the Plaintiffs reside, false imprisonment is an injury-in-fact that is

actual damages, and warrants an award of pecuniary compensation.

> Virginia - "False imprisonment is restraint of one's liberty without any sufficient cause therefor[; it is not essential that a person is] confined in jail or in the custody of an officer." *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 50-51 (1966).

> Idaho -  "In false imprisonment or unlawful restraint the primary right involved is the liberty of the citizen, the right of freedom of locomotion, the right to come and go or stay, when or where one may choose. In the main the authorities disclose that in order to constitute an unlawful restraint or false imprisonment the essential thing is the restraint of the person. The statute defines it as "the unlawful violation of the personal liberty of another." (I. C. A., sec. 17-1215, *supra.*) The true test seems to be not the extent of the restraint, nor the means by which it is accomplished, but the lawfulness thereof. There need be no actual force or threats, nor injury done to the individual's person, character or reputation. Neither is it necessary that the wrongful act be committed with malice or ill will or even with the slightest wrongful intention. Nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty, compelled to remain or go where he does not wish to, prevented from moving from one place to another as he may deem proper and desire, without sufficient authority, either directly or indirectly in any manner or by any means, by words alone, by acts alone, or by both, by merely operating on the will of the individual, through reasonable fear of personal difficulty, by actual or apparent force, etc., and the detention must be against the will of the person detained." *Griffin v. Clark*, 55

Idaho 364, 372-373 (Idaho 1935) (42 P.2d 297)

The United States of America -  "The right to travel is a part of the `liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, . . . may be as close to the heart of the  individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." *Aptheker v. Secretary of State* at 505-506 citing *Kent v. Dulles*, 357 U.S. 116 at 125-126. . . . "The substantiality of the restrictions cannot be doubted.  The Denial of a passport, given existing domestic and foreign laws, is a severe restriction upon, and in effect a prohibition against, world-wide foreign travel." Aptheker at 507

## DAMAGES RELIEF IS DUE FOR VIOLATIONS OF STATUTE

51. The Complaint alleges violation of the conspiracy statute 18 U.S.C. § 242;

the Privacy Act; and the Social Security Act, 42 U.S.C. § 408, a *mala prohibita*

felony.  The tortfeasors "co-conspirators" cloaked behind pseudonyms are liable.

"Although actual malice must be proved to justify punitive damages, legal malice inferred from circumstances is sufficient to support award of compensatory damages." *Tweedy v. J.C. Penney Co.*, 216 Va. 596, 221 S.E.2d 152 (1976).

"Willful and wanton negligence is action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Green v. Ingram*, 269 Va. 281, 292, 608 S.E.2d 917 (2005) (quoting Woods v. Mendez, 265 Va. 68, 76-77, 574 S.E.2d 263 (2003))  *Cromartie v. Billings*, 837 S.E.2d 247 (2020)

""But while the law permits all the wrongdoers to be proceeded against jointly, it also leaves the injured party at liberty to pursue any one of them severally, or any number less than the whole. . . .." (Cooley on Torts, sec. 81, p. 251, vol. 1, 4th ed.)" *Griffin v. Clark*, 55 Idaho 364, 377 (Idaho 1935)

52. Under the Federal Tort Claims act, the United States is liable for those wrongful injurious actions taken by those agents of the United States in their official capacity as any "legal" person would be.  "In the Federal Tort Claims Act, Congress waived the sovereign immunity of the United States." *Peterson v. U.S.*, 694 F.2d 943, 944 (3rd Cir., N.J., 1982).

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S. Code § 2674 - *Liability of United States*

53. The District Court and the Government erroneously deduced that the Defendants-Appellees are immune from liability damages.  The Privacy Act and RFRA appear to provide waiver of sovereign immunity even though they do not expressly say "sovereign immunity is waived."  The Federal Tort claims Act (FTCA) does not say "sovereign immunity is waived."  Instead, the FTCA itemizes where immunity is specifically retained (See 28 U.S.C. 2674, 3rd para.).  Therefore waiver of immunity ought to be presumed in every other case.  Likewise, the RFRA and Privacy Act ought to be assumed as a remedy to provide complete relief unless immunity is specifically retained.  Review is *de novo*.

## CASE AND CONTROVERSY REMAINS WHERE
## GOVERNMENT CONTINUES UNLAWFUL CONDUCT

54. The remedy and relief by declaratory judgment and injunction is still

necessary due to the Government's continued violations of the same law.

Carmichael continues to have standing where he is directly injured by the

Government's indirect assault through injuring of others to whom Carmichael is

duty bound to serve.  The District Court applied the wrong standard.  It was up to

the Government to "demonstrate" the wrong will not be repeated.  Instead of clear

and convincing evidence, the Court erred in its discriminatory speculation.

> The case may nevertheless be moot if the defendant can demonstrate that
> "there is no reasonable expectation that the wrong will be repeated."  The
> burden is a heavy one.""  *United States v. W.T. Grant Co.*, 345 U.S. 629

55. The District Court asserted that Carmichael's being ". . .'harangued' by

other individuals seeking his assistance who purportedly share similar religious

beliefs . . . " was not a sufficient injury.  The Court incorrectly said, "Carmichael

does not argue that he himself will likely be directly injured by Defendants in the

future—nor could he" (ECF 150, p. 7).  Carmichael did assert a personal direct

injury from the indirect assault upon other people:

> "The Defendants have so far asserted that applicants not responding exactly
> as the ultra vires form demands will guarantee a denial of their passport
> application (ECF 24-1, pp. 9, 18, 20; ECF 30, pp. 3, 4, 11). The Court has
> not made a finding of fact and law on those issues and the Defendants are
> unleashed to deny passports to those who are not getting assistance from
> Carmichael to obtain a passport (ECFs 127-1, 127-2). Until the District
> Court does its duty to adjudicate, and to enjoin the Defendants, Carmichael
> will continue to be harangued by the Defendants' victims and the courts will
> be subjected to multiple suits." (ECF 144, pp. 17-18)

56. The record has instances of others' religious accommodations being denied

during the litigation (ECF 127-1, 127-2); after the U.S. Attorney testified of the agency's intention to grant accommodations (ECF 80).  Carmichael is now injured by the assault on his wife, who he has a duty to protect according to scripture and rights retained pursuant to the Ninth Amendment.

57. Appellant's wife, Mrs. Carmichael, requested religious accommodation with her passport application on Dec. 27, 2022.  She replied to a request for more information, May 2023, and was ignored.  She gave notice of the law violation to Secretary Blinken, Aug. 2023.  She notified him of her intent to sue him and sent a copy to U.S. Attorney Byerley, Dec. 2023.  Mr. Carmichael asked Mr. Byerley what his position would be if two people wanted to join the case.  After telling Mr. Byerley it was Leslie, her passport was issued that day.  (Appendix – Affidavits, Leslie and David Carmichael).

> A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice.  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289.  If it did, courts would be compelled to leave the defendant free to return to its old ways.  Thus, the standard for determing whether a case has been mooted by the defendant's voluntary conduct is stringent:  A case might become moot if sebsequent events make it a.bsolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203.  The heavy burden of persuading the court that the challenged conduct cannot reasonable be expected to recur lies with the party asserting mootness. *Ibid*.  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000).  (Boulton reply p. 13)

58. Mr. Mahoney suffered the same injury as Appellant Lewis.  He filed his

passport renewal application in March, 2023.  The Government sent a demand for

Mahoney to provide a SSN or an affidavit.  Mr. Mahoney sent a letter July 5, 2023,

stating, "Due to my Spiritual beliefs, I don't use the SSN.  My allegiance is to my

Creator Yahweh."  The government sent him another demand for a SSN or

affidavit, saying his passport renewal would be denied without it.  Mr. Mahoney

contacted Carmichael for help.  Mr. Mahoney sent a thorough explanation of his

religious beliefs and practices by letter to the agency, Sept., 2023.  Ignored, Mr.

Mahoney notified Mr. Blinken of his intention to sue, Dec. 2023.  Mr. Carmichael

told Attorney Byerley by email that Mr. Mahoney was the other person who

intended to join.  Attorney Byerley read the email on Monday, Jan. 8, 2024.  That

day, Mr. Mahoney's passport renewal was issued (Appendix – Affidavit,

Mahoney).

> Both sides agree to the abstract proposition that voluntary cessation of
> allegedly illegal conduct does not deprive the tribunal of power to hear
> and determine the case, *i. e.,* does not make the case moot. *United States*
> v. *Trans-Missouri Freight Assn.,* 166 U. S. 290 (1897); *Walling* v.
> *Helmerich & Payne, Inc.,* 323 U. S. 37 (1944); *Hecht Co. v. Bowles,* 321
> U.S. 321 (1944).  A controversy may remain to be settled in such
> circumstances, *United States* v. *Aluminum Co. of America,* 148 F. 2d
> 416, 448 (1945), *e. g.,* a dispute over the legality of the challenged
> practices. *Walling* v. *Helmerich & Payne, Inc.,* supra; *Carpenters Union*
> v. *Labor Board,* 341 U. S. 707, 715 (1951). The defendant is free to
> return to his old ways. This, together with a public interest in having the
> legality of the practices settled, militates against a mootness conclusion.
> *United States* v. *Trans-Missouri Freight Assn., supra,* at 309, 310. For to
> say that the case has become moot means that the defendant is entitled to
> a dismissal as a matter of right, *Labor Board* v. *General Motors Corp.,*
> 179 F. 2d 221 (1950). The courts have rightly refused to grant defendants

such a powerful weapon against public law enforcement. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632; 97 L. Ed. 2d 1303, 73 S. Ct. 894 (1953) (Boulton Reply p. 15)

59. Carmichael is an injured party, co-dependent to each victim of the

Government's ongoing abuse (ECF 151, Obj. 21; Append. D.A. Carm. Affd.).

> In opposing the suggestion of mootness, appellants rely on *Church of Scientology v. United States,* 485 F.2d 313 (9th Cir. 1973), contending that there is still a justiciable controversy because "under substantial authority the appellant cannot be deprived of a determination of the merits simply because the appellees want to take a 'walk' from the case and hide their misconduct." *United States v. Ford*, 650 F.2d 1141, 1143 (1981) (Boulton Reply p. 17)

> "Without review now, Burlington will be subjected to continued risk of similar agency action in the future. Particularly since without review Burlington faces the prospect of never securing any judicial remedy, these hardships are adequate to sustain judicial review" *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 692 (D.C. Cir. 1996) (ECF 151, Obj. 21).

60. It is demonstrated by the instances of Mrs. Carmichael and Mr. Mahoney,

that the objections of Carmichael and Lewis are true, "It is an ongoing policy and

practice of the defendants' to obstruct the issuance of passports to Carmichael,

Lewis and those in their families and religious association" (quoting ECM 151,

Obj. 34, p. 23, ¶ 40).

> "First, a plaintiffs challenge will not be moot where it seeks declaratory relief as to an ongoing policy. Id. at 1429. In *Super Tire Engineering v. McCorkle*, 416 U.S. 115, 125, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) *Del Monte Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009), Second, even though the specific action that the plaintiff challenges has ceased, a claim for declaratory relief will not be moot even if the "plaintiff has made no challenge to [an] ongoing underlying policy, but

merely attacks an isolated agency action," so long as "the specific claim fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." *Id*. (internal quotation marks and citations omitted) *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)

61. Even if Article III Standing is not sufficiently alleged, the APA provides

remedy with declaratory and injunctive relief.  Review is *de novo*.

> The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus, the Administrative Procedure Act grants standing to a person "aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702 . . . A person or a family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. *Abington School District v. Schempp,* 374 U. S. 203. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150, 153-154 (1970)

## COUNT ONE, VIOLATION OF 22 U.S.C. § 2721
## ERRONEOUSLY DISMISSED

62. The District Court erred in dismissing the most glaring of the Government's

violations of law to the injury of Carmichael and Lewis – Count One of the

complaint, the violation of 22 USC § 2721, "Impermissible basis for the denial of a

passport."  **This is an issue of first impression where the Circuit Court needs to**

**reverse the error.**

63. The Foreign Relations Authorization Act of 1991 amended the State

Department Basic Authorities Act of 1956 (S.D.B.A), expressly prohibiting the

revocation and denial of the passports of Carmichael and Lewis in their

circumstances.  The S.D.B.A. (22 U.S.C. § 2721) provides:

> "IMPERMISSIBLE BASIS FOR DENIAL OF PASSPORTS (*sic*)  "Sec.
> 49.  A passport may not be denied issuance, revoked, restricted or
> otherwise limited because of any speech, activity, belief, affiliation, or
> membership, within or outside the United States, which, if held or
> conducted within the United States, would be protected by the first
> amendment to the Constitution of the United States." U.S. P.L. 102-138,
> Oct. 28, 1991, 105 STAT 655, Sec. 113, Denial of Passports

64. The District Court erroneously discounted the application of § 2721 under

the guise that:

> "Plaintiffs do not cite any facts suggesting that the Government instead
> denied and revoked their passports because of their religious belief. To the
> extent that Plaintiffs claim that requiring them to provide their social
> security numbers on their passport renewal applications burdens their
> religious beliefs, that claim is addressed below in the Court's discussion of
> the Religious Freedom Restoration Act. Because Plaintiffs have not alleged
> sufficient facts to plausibly establish that the Government denied their
> passport application because of any religious beliefs, the Court grants the
> Government's motion to dismiss on Plaintiffs' first cause of action. The
> Court denies Plaintiffs' cross motion for partial summary judgment and
> injunction on their first cause of action." (ECF 45, p. 9)

65. The District Court misconstrued the application of the statute, took up the

erroneous argument of the Government, and overlooked the facts alleged in the

complaint:

> "Moreover, Plaintiffs adduce no evidence that would demonstrate that the
> State Department's application denials and revocation were based on (or
> "because of") any religious exercise. In their statement of undisputed facts,3
> Plaintiffs merely restate facts contained in Defendants' declarations and
> repeat the legal conclusions in their amended complaint. See generally ECF
> No. 27-3. Plaintiffs expressly admit that the State Department denied Mr.

Lewis's and Mr. Pakosz's passport applications "be-cause [they] failed to provide [their] SSN." See ECF No. 27-3 at 3-4. As established in Defendants' motion, the State Department's actions in this regard are fully consistent with the Passport Act and the State Depart-ment's implementing regulations. Plaintiffs claim that their "motive" in not disclosing their social security numbers is "due to religion," id. at 2-4, but they provide no admissible evidence whatsoever that this motiva-tion made any difference in the State Department's adherence to its requirement that passport applicants provide a social security number, if they have one, to obtain a passport." (ECF 31, Def. Response to Plaint. Cross Mot. 1st CoA, p. 8)

66. The District Court's reliance on the Government's argument fails:

a)   Evidence of the Government's disputed motives wants discovery.

b)   The facts verified under oath affirm that the Appellants squarely put the

First Amendment matter to the adjudicators`(ECF 1, Complaint; ECFs 33,

34).

c)   The government argues against themselves where they say Appellants

provide no "evidence" that "this (religious) motivation made any difference .

. . " (ECF 31, p. 8).  Their deliberate indifference 'makes all the difference.'

The Government should 'adhere' to the mandatory language of their passport

statute 22 U.S.C. §2721 unless our religious objection was not facially

sincere or religious.

d)   The government wrongly elevates "adherence to its requirement that

passport applicants provide a social security number, if they have one, to

obtain a passport" above its "adherence" to 22 U.S.C. § 2721.  The denial of

a passport for not providing a SSN is merely discretionary if the

Government 'adheres' to 22 U.S.C. § 2714a(f)(1)(A) & (B).  Use of a SSN

is an administrative convenience, where the protection of religion and travel

rights are compelling interests of government.

e)   The government never produced any evidence that "if they have one"

applied to the Plaintiffs.  Carmichael and Lewis objected to the use pronouns

such as "their" when referring to a SSN (ECF 151, p. 2. Objection 1, ECF

46).  Carmichael was properly identified by the term "n/a" rather than a SSN

by the U.S. Dept. of Justice in its 2006 Judgment Payment Voucher (ECF

46-2, p, 18).

67. Our case is like *Aptheker* where the Government says they will relent in the

restrictions upon our travel if we will simply abandon our religious-belief-

motivated, First-Amendment protected, activity.  We must affiliate with the

membership of the voluntary welfare social benefit scheme, and identify with its

number by our written speech.  The Supreme Court rejected that parallel in

*Aptheker*:

> "The restrictive effect of the legislation cannot be gain-said by emphasizing,
> as the Government seems to do, that a member of a registering organization
> could recapture his freedom to travel by simply in good faith abandoning his
> membership in the organization.  Since freedom of association is itself
> guaranteed in the First Amendment, restrictions imposed upon the right to
> travel cannot be dismissed by asserting that the right to travel could be fully
> exercised if the individual would first yield up his membership in a given
> association."  *Aptheker v. Secretary of State*, 378 U.S. 500, 507 (1964)

68. The sound basis for the District Court upholding Count Two, violation of

the RFRA, argues against its reasons for dismissing Count One.  The RFRA

protects people from Government injury to their religious rights where there is no

protective statute that expressly protects them related to a particular conflicting

governmental interest.  The facts alleged to support protection under RFRA are the

facts that are sufficient to invoke the protection expressly provided by 22 U.S.C. §

2721.  Once it is facially evident that the passport applicants conduct is religious

and sincere, under the principles of *United States* v. *Seeger,* 380 U.S. 163 (1965)

and *Welsh* v. *United States,* 398 U.S. 333 (1970), the passport statute 22 U.S.C. §

2721 has preemptive power over the adjudicator in order to uphold the compelling

governmental interest to uphold the fundamental law.  The administrative

convenience of SSN use must yield.

69. We Appellants will prove to the reasonable person that the tortfeasors knew

or should have known that our not identifying with the SSN is protected by the

First Amendment and 22 U.S.C. § 2721.  Count One was adequately pled.  Review

is *de novo*.

## CARMICHAEL'S FIFTH AMENDMENT CLAIM ERRONEOUSLY DISMISSED

70. The District Court erroneously dismissed Carmichael's Fifth Amendment

claim that he was denied an appeal under 22 C.F.R. § 51.70(b)(2), stripping him of

his travel liberty rights, without due process.  The first prong of the Court's error

was its blindly applying the Government's argument that Carmichael was offered

an opportunity to appeal the after-the-fact revocation but that Carmichael declined

to appeal to the agency (ECF 45, p. 17, ¶ 2nd).

71. The revocation letter stated, "You may request a hearing under 22 C.F.R. §§

51.70-51.74" (Appendix, Carmichael Revocation).   The next sentence limited the

appeal to "… and would only address the basis upon which the Department

revoked your passport." That "basis" excludes appeal under § 51.70(b)(2) which

prohibits appeal to applications denied pursuant to § 51.60(f), failure to identify

with a SSN.

72. The Court abused discretion where it failed to read Carmichael's

memoranda (ECF 27-1, pp. 37-39, Mem. in Supp. of Resp. to Dism. Mot.; ECF 27-

2, pp. 8-9, ¶s 5.k-5.l, Plain. Disp. Facts).  Otherwise, it would see the obvious self-

contradiction of the Government's claim by reading the back-to-back Government

letters sent to Carmichael in June of 2019 (ECF 27-1, pp. 37-39, ¶s oo-pp).

73. The Court then linked its erroneous conclusion of the process excluded to

Carmichael by the 'unconstitutional' regulation, with an erroneous application of a

case that is distinguished from Carmichael's situation, *Haig v. Agee*, 43 U.S. 280

(1981), "This notice is identical to the procedures found to have met the demands

of due process in *Haig*.  Accordingly, Carmichael has failed to state a claim that he

was denied due process, and the Court grants the Government's motion to dismiss

on Carmichael's due process claim." (ECF 44, p. 17)  For not actually reading the

memoranda, and not having a record to actually review, the Court could not make

the assessment that it said was necessary to determine if *Haig*'s facts and law

applied to Carmichael's.

> ""To determine whether due process was granted, courts must consider
> three factors: (1) "the private interest that will be affected by the official
> action"; (2) "the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards"; and (3) "the Government's interest,
> including the function involved and the fiscal and administrative burdens
> that [an] additional or substitute procedural requirement would entail."
> *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v.
> Manzo*, 380 U.S. 545, 552 (1965))."" (ECF 44, p. 15)

74. Nowhere did the Court assess, nor review whether at the time of the

revocation that the Government assessed:  1)  The liberty right interest of

Carmichael; 2)  The risk of erroneous deprivation through the procedures used and

the other procedures available such as notifying Carmichael of their intent to

revoke the passport if they did not get a SSN within so many days; 3)  The

Government's interest and its deliberation of procedural requirements that would

be entailed compared to immediate revocation.  If the Court had read Carmichael's

memoranda and the actual documents of the Government, the Court could not have

concluded that *Haig* was controlling.  Carmichael objected (ECF 47, pp. 3-4, ¶ 9-

10, p. 17, ¶ 40, Remonstrance).

> As this Circuit has recognized, "in order to allow for meaningful judicial
> review, [an] agency must produce an administrative record that delineates
> the path by which it reached its decision." *Farrell v. Tillerson*, 315 F. Supp.
> 3d 47, 54 (D.D.C. 2018) citing *Occidental Petroleum Corp. v. SEC*, 873

p. 32 of 48

F.2d 325, 339 (D.C. Cir. 1989).

75.  Pre-revocation due process should have been provided to Carmichael just as the Government provided pre-denial notice to Lewis - by way of at least asking for him to identify himself by a SSN.  Discovery will reveal who it was that got Mr. Rolbin to dismiss Carmichael's passport when there was no justification for it. The person knew the history of Mr. Carmichael's religious accommodation request.

76. Review is *de novo* due to the application of law about which the District Court clearly erred regarding the facts related to the evidence of law on the record.

## COURT ERRONEOUSLY DEMANDED AN UNREASONABLE PLEADING STANDARD

77. The District Court erroneously dismissed the Fifth Cause of Action which claimed that the regulation 22 C.F.R. § 51.60(f) that enforces 22 U.S.C. §2714a(f)(1)(A) (ECF 45, pp. 18-20) is unconstitutional.    The Court erred in law or abused discretion where it demanded the *pro se* plaintiffs to allege a particular theory of law, saying, ""Plaintiffs do not explain how the challenged regulations are unconstitutional in a "substantial number of [their] applications" in violation of the First Amendment. *Wash. State v. Grange*, 552 U.S. at 449 n.6.  Nor do they explain how the regulations sweep too broadly or too vaguely in the context of due process"" (ECF 45, p. 19).  We objected to the dismissal (ECF 47, pp. 1-19, ¶ 42-44).  Review is *de novo* since the Court misapplied the law of pleading.

## 22 C.F.R. § 51.60(F) IS UNCONSTITUTIONAL FOR VAGUENESS AND OVERBREADTH

78. Appellants Carmichael and Lewis suffered an injury that was spawned by the unconstitutional provision of the Fixing America's Surface Transportation Act, U.S. P.L. 114-94, 129 STAT 1732, §§32101(f) (22 U.S.C. § 2714a(f)) and its enforcing regulations, 22 C.F.R. 51.60(f) and 51.70(b)(2) (Appendix). That act of Congress and the enforcing regulations too broadly and indiscriminately restrict the right to travel and abridge the liberty guaranteed by the Fifth Amendment to those who for conscience sake cannot identify with a SSN. They explicitly bar in-agency appeal, providing neither pre- nor post-denial or revocation hearings, treating every person not identifying with a SSN as a presumed miscreant without probable cause.

79. The U.S. Supreme Court declared the Subversive Activities Control Act (S.A.C.A) to be unconstitutional in *Aptheker v. Secretary of State,* "§ 6 of the Control Act too broadly and indiscriminately restricts the right to travel and thereby abridges the liberty guaranteed by the Fifth Amendment." *Aptheker v. Secretary of State*, 378 U.S. 500, 505 (1964). The principle applies to this case.

80. When the District Court permitted Carmichael to amend the complaint to address the Court's dismissal of his Fifth Amendment Claim, Carmichael and Lewis amended the complaint to account for the intertwined facts and law related between the Fourth and Fifth Causes of Action. They cited 22 C.F.R. § 51.70 and

its denying an appeal for passport denials under 22 C.F.R. § 51.60(f).  (ECF 51, pp. 35-47, Comp. 2nd Amend.)

81. Carmichael and Lewis, having leave to amend the complaint at the Fourth Cause of Action, did so in a way that exposed the violations of law of the Government and the unconstitutionality of 22 C.F.R. § 51.60(f) (ECF 51, pp. 51-55, ¶s 123-125).  It cited *Aptheker v. Secretary of State*, 378 U.S. 500 (1964) as the controlling case at paragraph 125.

82. The unconstitutional injury to Carmichael and Lewis by the unconstitutional application of 22 U.S.C. § 2714a(f) and the unconstitutional 22 C.F.R. § 51.60(f) was fully briefed (ECF 46-1, Mem. in Supp. of Mot. to Amend the Compl. Regarding Due Process).

### *APTHEKER* IDENTIFIES UNLAWFUL RESTRAINT CAUSE OF ACTION

83. Just as the Subversive Activities Control Act (S.A.C.A.) instituted a *Writ Ne Exeat Republica* without due process to Aptheker, Carmichael and Lewis suffered the same unlawful injury by the unlawful denial and revocation of their passports. It is an Article III injury warranting the Court's jurisdiction.  The *Aptheker* Court cited *Kent v. Dulles,* 357 U.S. 116, 127 (1958) saying:

> "The right to travel is a part of the `liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. . . . Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. Travel abroad, like travel within the country, . . . may be as close to the heart of the  individual as the choice of what he eats, or wears, or reads.

Freedom of movement is basic in our scheme of values." *Aptheker v. Secretary of State* at 505-506 citing *Kent v. Dulle*s, 357 U.S. 116 at 125-126.

"The substantiality of the restrictions cannot be doubted. The Denial of a passport, given existing domestic and foreign laws, is a severe restriction upon, and in effect a prohibition against, world-wide foreign travel." *Id.*, at 507 (Emphasis added)

## 22 C.F.R. § 51.60(f) PARALLELS UNCONSTITUTIONAL STATUTE IN *APTHEKER*

84. In *Aptheker*, the appeals hearing examiners determined that their hands were tied by statute. In our case, the Government asserts that their hands are tied by 22 C.F.R. 51.70(b)(2) which prohibits an appeal to those who violate 22 C.F. R. 51.60(f).

"(f) The Department may refuse to issue a passport to an applicant who fails to provide his or her Social Security account number on his or her passport application or who willfully, intentionally, negligently, or recklessly includes an incorrect or invalid Social Security account number." 22 C.F. R. 51.60(f). (Appendix)

"(b) The provisions of §§ 51.70 through 51.74 do not apply to any action of the Department denying, restricting, revoking, cancelling or invalidating a passport or Consular Report of Birth Abroad, or in any other way adversely affecting the ability of a person to receive or use a passport or Consular Report of Birth Abroad, for reasons not set forth in **§ 51.70(a)**, including, as applicable, those listed at: . . . (2) Section 51.60(f) (failure to provide a social security number, or purposefully providing an incorrect number)"
22 C.F.R. 51.70(b) (Emphasis added **where § 51.70(a)** provides for an appeal hearing except for this subparagraph, inter alia) (Appendix)

85. Under the *Aptheker* rule, 22 C.F.R. 51.60(f) is unconstitutional where it bars appeal pursuant to 22 C.F.R. 51.70(b)(2) for people who cannot identify with a

SSN for any reason.

> It is a familiar and basic principle, recently reaffirmed in *NAACP v. Alabama*, 377 U.S. 288, 307, that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." See, *e. g., NAACP* v. *Button*, 371 U.S. 415, 438; *Louisiana ex rel Gremillion v. NAACP*, 366 U.S. 293; *Shelton* v. *Tucker*, 364 U.S. 479, 488; *Schware* v. *Board of Bar Examiners*,  353 U.S. 232, 239; *Martin* v. *Struthers*, 319 U.S. 141, 146 -149; *Cantwell* v. *Connecticut*, 310 U.S. 296, 304-307; *Schneider* v. *State*, 308 U.S. 147, 161, 165.  *Aptheker v. Secretary of State*, 378 U.S. 500, 508 (1964)

> War may be the occasion for serious curtailment of liberty. Absent war, I see no way to keep a citizen from traveling within or without the country, unless there is power to detain him. *Ex parte Endo*, 323 U.S. 283. And no authority to detain exists except under extreme conditions, *e. g.*, unless he has been convicted of a crime or unless there is probable cause for issuing a warrant of arrest by standards of the Fourth Amendment. This freedom of movement is the very essence of our free society, setting us apart. Like the right of assembly and the right of association, it often makes all other rights meaningful — knowing, studying, arguing, exploring, conversing, observing and even thinking. **Once the right to travel is curtailed, all other rights suffer**, just as when curfew or home detention is placed on a person.

> We cannot exercise and enjoy citizenship in world perspective without the right to travel abroad; and I see no constitutional way to curb it unless, as I said, there is the power to detain.  *Aptheker v. Secretary of State*, 378 U.S. 500, 519-521 (1964) (Emphasis added)

## DISTRICT COURT ERRED DENYING LEWIS'S INJUNCTIVE RELIEF

86. Lewis moved the Court to compel the Government to issue his renewed passport in accordance with the application and supporting documentation that was the subject of this litigation (ECF 84; 84-2, Mem. in Supp.).  He pled for the relief

(ECFs 15, 51, pp. 2, 4, 59-62).  He provided actual evidence of the law that

controlled passport photos (ECF 84-3, 84-4, 84-5, 84-6, 84-7, 84-8, 84-9).  He was

correct as a matter of fact and law, and was owed injunctive relief:

> "Where multiple causes of action are alleged, plaintiff need only show
> likelihood of success on one claim to justify injunctive relief." *Kirwa v.
> United States Department of Defense*, 285 F.Supp.3d 21 citing *McNeil-PPC,
> Inc. v. Granutec, Inc*., 919 F. Supp. 198, 201 (E.D.N.C. 1995); see also
> *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir.
> 1985).

87. Evading the Court's order to respond, the Government moved to dismiss

again (ECF 99).  The Government claimed that there was no equitable relief

available to Carmichael or Lewis.  Treating the Government's motion for

dismissal, in one sense, as the Government's response to Lewis's motion to

compel, Lewis replied (ECF 102).

88. Lewis correctly replied that there is no contest that Lewis's photo was

suitable at the time of his application citing the Foreign Affairs Manual, 8 FAM

402.1-2, supplied as an exhibit with his motion (ECF 84-8).  Lewis correctly

replied that the law and regulations held that there was no need to provide a new

photograph.  His motion to compel should have been adjudicated.  Judgment on the

merits and injunctive relief for Lewis was the duty of the Court.

> ""9.  Let's not forget, we did not ask the Defendants to process our
> applications "at this time." Those applications were processed at the time of
> their being submitted, and were unlawfully denied. Such renewal passport
> denial is subject to vacatur and the compelling of issuance on the basis of
> what was put to the Defendants upon submission of the applications.""

p. 38 of 48

10. The Defendants' action holding our passports hostage to an unnecessary "new" photograph is not only contrary to the published policy they cite in the Exhibit A letter, 8 FAM 402.1 (See actual text ECF 84-8), it is not rational, reasonable, or fair; it is arbitrary and capricious; and it perpetuates the Plaintiffs *ex neat republica* without due process and ultra vires.

11. The passport renewal applications of the Plaintiffs from 2018 and 2019 are still on the desk of the Defendants', with all the required information due at time of application as required by law and regulation (ECF 99-3, ¶ 3.). We are not in a situation of - new-application-filed-by- the-Plaintiffs post-religious-accommodation."" (ECF 102, pp. 4-5)

## THE COURT ARBITRARILY SET THE BAR TOO HIGH ON LEWIS'S MOTION TO COMPEL

89. The Court ignored the obligation of the express rules upon the Government to produce the administrative record, and for the Court to facilitate discovery in its review of the agency action. In bias against the pro se plaintiff, Lewis's motion to compel was excluded for consideration because he did not specify the particular paragraphs in the complaint that he wanted to apply to his motion in exclusion to all other paragraphs (ECF 125, Dism. Order Mem., p. 8). Reading the motion and the complaint as a whole, the Court reasonably discerned that it was a ""motion for summary judgment on Lewis . . . claims for equitable relief, i.e., issuing renewed passports, because they are asking the Court to "compel" Defendants to do exactly what they request in their complaint's prayer for relief. See 2d Am. Compl. ¶ 142(1) (demanding that the Court "compel renewal of their passport applications").. . . which do not even explain which causes of actions are relied on, do not demonstrate entitlement to judgment in Plaintiffs' favor beyond any genuine

dispute of material fact."" (ECF 125, p. 8)

90. The Court completely ignored the gravity of Lewis's motion for immediate injunctive relief. The Court's "dispute of material fact" reference must be alluding to only the first half, and completely ignoring the second half, of Lewis's statement in his motion to compel, ""Notwithstanding there is a factual dispute as to whether the guiding document text uses the word "issue" or "application", the matter of whether the reference for the photograph validity date is a matter of law."" (ECF 102, p. 9, ¶ 19). The Court converted his uncontroverted facts in support of Lewis's motion for injunctive relief into a challenge to the Government's dismissal summary judgment motion dispute of facts (ECF 125, p. 8). Lewis was 100% right on the law and facts, and the District Court in partnership with the Government was unlawfully keeping a passport out of his hands.

91. The Court's bias is shown in their oblique acknowledgement that the Government's position is unsupportable that Lewis's passport should be denied for his not volunteering a new photograph. "Accordingly, the source of Defendants' insistence on requiring an updated photograph for Lewis—and, therefore, one of the roadblocks to Lewis receiving his passport—is unclear. (*Id.,* p. 27.) That place is where an unbiased Court should have said, 'Lewis's demand for injunctive relief is granted. The Government cannot support its allegation that a new photograph is necessary to replace the one provided with the application." The Court should

p. 40 of 48

have gone on to declare that both the first and last denials of Lewis's passport renewal applications were unlawful.  A *de novo* review ought to be able to find it a fact that 8 FAM 402.1-2(2) photograph regulation required Lewis's passport photo to be current at application, and that there being no evidence that it was not, it is presumed to be accurate as of the date of his application.  The dismissal of his application the second time was unlawful.  The case to needs to be remanded to the District Court for discovery of identification of the tortfeasors, their culpability and their liability for judgment on the merits and damages relief.

## THE COURT ABANDONED THE JUDICIARY
## IN ITS ADMINISTRATIVE ORDER

92. When the District Court ordered the Government to issue Lewis's passport by Minute Order, May 25, 2023, without a judicial review of the record, without declaration of the application of the facts to the law, the District Court's order was administrative rather than judicial.

> The Court, it is true, has power "to affirm, modify, or set aside" the order of the Commission "in whole or in part." § 313(b). But that authority is not power to exercise an essentially administrative function. *See Ford Motor Co. v. Labor Board,* 305 U. S. 364, 305 U. S. 373-374; *Jacob Siegel Co. v. Federal Trade Commission,* 327 U. S. 608.

93. The last known determination by the agency was denial of Lewis's passport for non-religious reasons.  The District Court abused discretion by its evasion of adjudicating Lewis's case and controversy.  Declaratory judgment is due after discovery, and a trial on the merits, which will find that Lewis prevails

substantially on his claim and gets the complete relief that is due him.

94. The Government's denial of Lewis's passport the second time was unlawful, and frivolously defended by the Government, and abusively facilitated by the District Court. It is a new trespass upon Lewis that warrants damages relief. Due process by discovery, in accordance with the Rules, is still wanting. The ultimate issuing of Lewis's passport, at the eleventh hour, by order of the Court (Minute Order, May 25, 2022) without finding of fact or conclusion of law to reverse the Court order (ECF 124, 125), is an abuse of discretion. The order denies due process and judgment on the merits to Lewis and needs to be vacated. Upon its *de novo* review, the Circuit Court needs to declare that the record is sufficient to show that Lewis's first and second denial of his passport renewal application was unlawful, and to vacate the dismissal orders of the District Court related to Lewis's claims.

### DECLARATORY RELIEF BASED ON DISCOVERABLE FACTS DETERMINES APPROPRIATE RELIEF FOR REVOKED PASSPORT

95. A case and controversy remains regarding the appropriate relief related to Carmichael's demand for the recission of the passport revocation. Carmichael's January 2018 passport renewal was issued in accordance with the law, and was approved by someone who applied the law. It was revoked contrary to law. The appropriate relief demanded by Carmichael was not only recission of the revocation injunctive relief (ECF 51, pp. 59-60, ¶ 142(1)), there remains discovery

and declaratory judgment relief to identify the facts and solidly apply the law to

them for the protection of the people.  To be sure, the Government promised the

recission relief in their Reply to their Remand motion (ECF 66, p. 5) until they

played bait-Carmichael-to-moot-his-case litigation games (ECF 80).  Carmichael

demanded declaratory judgment relief under 28 U.S.C. § 2201, and under the APA

if no other statute applies.

> Where, however, a complaint seeks injunctive relief together with
> declaratory relief and the injunctive relief features have been rendered
> moot by subsequent events, a court must still proceed to do complete
> justice by entertaining the plea for declaratory relief. *Bisno v. Sax* (1959)
> 175 Cal.App.2d 714 [ 346 P.2d 814]. Therefore, the issue presented by
> appellees' motion to dismiss is whether effective declaratory relief can be
> granted to appellants should the judgment below be reversed and the
> action remanded for trial. *Shultz v. O'Rourke* (1931) 118 Cal.App. 207 [ 4
> P.2d 797]." City of Coronado v. Sexton, 227 Cal.App.2d 444, 38 Cal.
> Rptr. 827 (Cal. Ct. App. 1964) cited by *Church of Scientology of Cal. v.
> United States*, 506 U.S. 9, 12 (1992)

96. The Court's repeating the "not taking yes for an answer" quip of the U.S.

Attorney hints at bias for the Appellee (ECF 125, 150, quoting Def filing).  It

indicates abuse of discretion whereby it is clear that the Court did not read the

submissions of Carmichael explaining his motive to uphold the law rather than to

usurp it for convenience:

> "The case and controversy before the court is due to the *ultra vires*
> activities of the Defendants.  When a passport comes to me in the mail,
> and I find that even that "replacement" passport document is a result of
> *ultra vires* activities, I have the moral and civil duty to not participate or
> benefit from the act.  As I said in my opposition to the statement in the
> order, "To partner with the evasion of the application of law is a

partnership with sedition.  In good faith, I cannot abate in my standing for complete relief as a matter of law."" (ECF 101, p. 2, ¶ 4)

97. Legitimate discovery is necessary to determine facts of the replacement passport legitimacy by the Rules of Evidence rather than trial by non-adversarial declaration.  Carmichael contends that a replacement passport requires an application and a recent photograph unless the Government is making up rules as they go in a moot-the-case scheme (ECF 85, ¶ 5 & ECF 90, p. 1, ¶ 2).  As a matter of law 'the Department' did not revoke the passport.  Somebody misleading Mr. Rolbin is not the action of 'the Department.'  The unlawful revocation with no pre-revocation notice is void *ab initio*.

98. The Government admitted that it can rescind the revocation (ECF 66, p. 5).  That shows injunctive relief of the voiding of the revocation of Carmichael's Jan 2018 passport, which is the object of the case and controversy, it appropriate relief.  Its speculations of possible inconveniences to Carmichael are irrelevant.

99. The Court abused discretion where it made a declaratory judgment without a finding of fact and conclusion of law on the merits that the replacement passport was "his passport" to which he was ordered to take possession.  A minute order is no substitute for legitimate exercise of Article III power.  The District Court's unwarranted reliance upon disputed material facts and unsubstantiated and often proven wrong Government declarations in its erroneous order by summary judgment, and the Court's partnership with the Government to evade the

appropriate due process that is the path to judgment on the merits, warrants the Circuit Court's *de novo* review.

## RELIEF

100. Upon *de novo* review, declare where the District Court erred as to law, made clearly erroneous conclusions as to facts, and abused its discretion in its Minute Orders, and formal Orders.  Declare the following:

A)     The Appellants' case is not moot.  They have declaratory, injunctive and damages relief available under 28 USC §§ 1361 and 2202; 42 USC §2000bb, where they have Article III standing.  In the alternative, they have standing for declaratory relieve under 5 U.S.C. §§ 55a or 701-706, which may can likely expose the warrant for injunctive and damages relief.

B)     Count One of the Complaint was adequately pled that Appellees violated 22 USC § 2721.  The District Court misapplied the law to the facts. Adjudicators should have known and applied the law prohibiting the passport denial and revocation.

C)     Count Four of the Complaint was adequately pled by Carmichael and erroneously dismissed.  Regulations CFR §51.60(f) and § 51.70(b)(2) excluded him from access to appeal.  His passport was revoked without reasonable notice.

D)    Count Five of the Complaint was adequately pled and erroneously dismissed where the pleading standard was unnecessarily high.  22 CFR § 51.60(f) is unconstitutional in that it bars those who do not identify with a SSN for legitimate reasons from obtaining a passports and from the appeal process available to other applicants.

E)    The RFRA and the FTCA provide for "adequate relief" which is compensatory or nominal damages from the United States for its employees causing injury in their official capacity.  RFRA provides relief in damages for injuries by persons in their individual capacity, tortfeasors, who violate the law or abuse the power of their office.  Use of the term "co-conspirators" is a legitimate way for pro se plaintiffs to depict the defendants whose identities are cloaked.

F)    The District Court erred in law or abused discretion where it refused to demand the complete record on review or provide discovery.

G)    The remand, by minute order of January 25, was an abuse of discretion, violating the rule of *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379 (D.C. Cir. 2017).  Since it is deducible the Government should have known by its records that nothing was wanting to issue Lewis's passport and rescind the revocation of Carmichael's.  Liability for damages relief is conceivable for prolonging the trespass on the Appellants.

p. 46 of 48

H)    The minute order of May 25, 2022, as well as those of January 20 and April 19 and May 7, of 2021, was an abuse of discretion where the Court evaded its Judicial duty, grossly neglecting to declare the authority of its orders according to the merits.  Carmichael's claim for declaration and injunctive relief of revocation rescission is actionable.

101. Vacate the orders dismissing Counts One, Four as to Carmichael, and Five of the District Court order of August 28, 2020 (ECFs 44, /45).

102. Vacate the orders dismissing the Appellants' claims on March 25, 2022 (ECF 124, 125) and March 20, 2023 (ECF 149, 150)

103. Vacate dispositive "Minute Orders" such as those of January 20, 2021, April 19, 2021 May 7, 2021, and May 25, 2022.

104. Order Secretary Blinken to:  Make exception to those who do not identify with a SSN for sincerely held religious beliefs or activities; Institute a training regimen for all passport adjudicators to ensure the injunction is properly enforced. Produce the whole record.; order the rescission of the revocation of Carmichael's passport January, 2018, unless it can be demonstrated by actual evidence that it was not lawfully issued upon a motion for relief from judgment or order.  Give notice of its rescission to those who were notified of its revocation.

105. Remand the case and order the District Court to:  Have the Chief Judge consider reassigning the case; Commence discovery; Adjudicate the claims to the

end of complete relief.

106. Provide other relief by declaration or order, according to equity, and according to the discernment and the power of the Circuit Court.

**23-5111**

I, David Alan Carmichael, Join with Lawrence Donald Lewis in this our

Appellants' Brief, in case no. 23-5111 in the United States Court of Appeals for the

District of Columbia Circuit.

ss: *David Alan Carmichael*
David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia  23664
davidalancarmichael@protonmail.com

A-1

**23-5111**

I, Lawrence Donald Lewis, Join with David Alan Carmichael in this our
Appellants' Brief, in case no. 23-5111 in the United States Court of Appeals for the
District of Columbia Circuit.

ss: *Lawrence Donald Lewis*
Lawrence Donald Lewis
966 Bourbon Lane
Nordman, Idaho 83848

A-2

**23-5111**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the 13,000 word type-volume limit of FRAP 32(a)(7)(B)(i).  Excluding certificates and tables, the brief contains 12,960 words which includes all text characters, measured by Microsoft Word, word processing application.  It uses Times New Roman, 14-point font.

ss: *David Alan Carmichael*                    January 21, 2024
David Alan Carmichael
1748 Old Buckroe Road
Hampton, Virginia  23664

A-3